## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 20 2017, 9:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT, E.R.W.

Catherine S. Christoff
Christoff & Christoff Attorneys
Fort Wayne, Indiana

ATTORNEY FOR APPELLANT, R.W.

Yvonne M. Spillers
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: D.H. & S.W., (Minor Children), <br><br> and, <br><br> E.W. (Mother) and R.W. (Father), <br><br> *Appellants-Respondents,* | March 20, 2017 <br><br> Court of Appeals Case No. 02A03-1609-JT-2137 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Charles F. Pratt, Judge <br><br> Trial Court Cause No. 02D08-1511-JT-134 02D08-1511-JT-135 |

v.

Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Barnes, Judge.**

# Case Summary

R.W. ("Father") appeals the termination of his parental rights to S.W., and E.R.W. ("Mother") appeals the termination of her parental rights to D.H. and S.W. We affirm.

# Issues

Although they filed separate Appellants' briefs, Father and Mother both argue that the evidence is insufficient to support the termination of their parental rights.

# Facts

D.H. was born in December 2005 to D.B.H. and Mother.[1] Mother and D.B.H. divorced in 2010, and Mother was awarded custody of D.H. At some point,

---

[1] D.B.H.'s parental rights were also terminated, but he is not a party to this appeal.

Father and Mother married and lived with D.H. and Mother's elderly mother in a trailer in Allen County. The family came to the attention of the Department of Child Services ("DCS"),[2] and the trial court authorized DCS to file a child in need of services ("CHINS") proceeding. Mother and Father admitted to using Spice, a synthetic drug, and in January 2013, D.H. was found to be a CHINS. Initially, D.H. remained in Mother's care. The trial court ordered Mother and Father, in part, to refrain from criminal activity, maintain appropriate housing, submit to a diagnostic assessment, participate in home based services, ensure that D.H. attended school, and submit to random drug testing. The trial court also ordered Mother to obtain suitable employment.

[4] There were significant concerns with the condition of the family's trailer, and it was ultimately condemned. Father repeatedly threatened service providers as a result of the condemnation. In early 2013, service providers helped the family move to a home on Webster Street. The family, however, struggled to maintain the utilities and cleanliness of the house. On some visits by service providers, Mother seemed to be under the influence of drugs or alcohol, but she denied consuming anything.

[5] In May 2013, the trial court removed D.H. from Mother's care due to her failure to participate in services and after D.H. missed twenty-three days of

---

[2] The trial court found that D.H. had previously been found to be a CHINS based, in part, upon a failure to thrive. The record does not contain documents related to the prior CHINS proceeding, and it also does not contain the CHINS petitions for the current proceedings.

school. Mother visited with D.H. twice a week. Father verbally threatened and was "physically confrontational" with service providers, and he became angry during a visitation with D.H. and cursed. Tr. Vol. I p. 97, 138. He was ordered to participate in anger management counseling, but Father did not complete the counseling. He left during orientation. Father's visits with D.H. were suspended because his temperament was "explosive," which was "detrimental emotionally" to D.H. Tr. Vol. II p. 2. At one point during the proceedings, Mother also became unhappy with her case manager and left her a message "that she was going to come up to the DCS Office and slap [her] in the f**king face . . . ." Tr. Vol. I p. 132.

[6] At some point, Father and Mother moved into a hotel room with Mother's elderly mother. They have lived there for approximately two years. The hotel room has one room with two beds, a kitchenette, and one bathroom. Mother's mother's Social Security benefits support the family.

[7] In March 2014, Mother was arrested and charged with misdemeanor possession of paraphernalia (two smoking pipes) and a synthetic drug (Spice) after she pulled out in front of an officer and was involved in an accident as she was leaving a supervised visitation. As a result, Mother was sentenced to one year in jail, which was suspended. S.W. was born in December 2014 to Father and Mother. She was born prematurely and weighed only four pounds. S.W. required specialized feedings, and Mother was unable to comprehend and act upon S.W.'s special needs. There were concerns about Mother's ability to feed S.W. and about Father and Mother smoking in the hotel room where Mother's

mother was using oxygen. S.W. was also found to be a CHINS, and she was placed in foster care with D.H. in January 2015 by DCS. Father had supervised visitation with S.W. on one occasion. After S.W. was placed in foster care, Mother visited with S.W. and D.H. three or four times.

[8] Mother was again arrested in February 2015 for possession of a synthetic drug and possession of paraphernalia. Mother entered a drug court program in March 2015. However, Mother violated the drug court rules and was incarcerated from May 18, 2015, to June 3, 2015. She was then required to enroll in the Rose Home Program. Although Mother committed to spending six months at the Rose Home, she left after only three months, resulting in her termination from the drug court program. When she left the Rose Home, she owed $1,640 for fees and rent. Although she had been working, she had been giving her money to Father instead of paying her fees and rent. As a result of leaving Rose Home, Mother was jailed from September 21, 2015, to November 19, 2015. In December 2015, Mother tested positive for a synthetic cannabinoid. Mother was pregnant again at that time. Mother was incarcerated for a probation violation on March 9, 2016, as a result of missing a probation appointment. She expected to be released from jail on September 7, 2016.

[9] Mother's participation in individual therapy and substance abuse treatment was also sporadic. After two years of intensive services provided to the family, there was little, if any progress. The family still had no stable housing, and Father

and Mother lacked stable employment. Father was still living in the hotel with Mother's mother, and Mother was incarcerated.

[10] In December 2015, DCS filed petitions to terminate Mother, Father, and D.B.H.'s parental rights. Termination hearings were held in May 2016. The trial court entered findings of fact and conclusions thereon terminating the parental rights of Mother and D.B.H. to D.H. and the parental rights of Mother and Father to S.W. Father and Mother now appeal.

## Analysis

[11] Father and Mother challenge the termination of their parental rights to S.W., and Mother challenges the termination of her parental rights to D.H. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when

the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[12] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's and Mother's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[13] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:

> (i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)   that termination is in the best interests of the child; and
>
> (D)   that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

## I. Changed Conditions

Both Father and Mother challenge the trial court's finding of a reasonable probability that the conditions resulting in D.H. and S.W.'s removals or the reasons for placement outside the home of the parents will not be remedied.[3]  In

---

[3] Father and Mother also argue the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of the children is clearly erroneous.  However, the trial court did not make a finding that the continuation of the parent-child relationship poses a threat to the children's well-being.  Rather, the trial court found a reasonable probability that the conditions that resulted in the children's

making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. However, the trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

[15] Regarding the termination of parental rights to D.H., the trial court found:

> By the clear and convincing evidence the court determines that there is a reasonable probability that reasons that brought about the child's placement outside the home will not be remedied. This is the second CHINS case involving the Mother, [D.H.'s] father and [Father]. The adjudication in the prior case, as in this most recent case, was based on neglect and drug use. Services were provided to address those issues. Then, with the birth of [S.W.], another CHINS adjudication occurred owing in part to the inability of the Mother and [Father] to provide for her then special needs and their inability to maintain sustainable appropriate housing. The Mother and [Father] have moved from a condemned trailer, to a home that also presented health hazards including the presence of mold, and then to a motel room in an area that poses risk of violent events including fights and gunfire. The motel room is inadequate for the care for the children and is additionally compromised by the needs of the Mother's elderly mother. They rely on the seventy-seven year old grandmother for their financial support. They are without resources and, due in part to their rental history, to secure more appropriate housing. Despite multiple intervention services for

removal and continued placement outside parent's home would not be remedied, and we only address that issue.

drug addictions, and abuse, the Mother has been arrested for or violated her probation for drug possession or use. She is currently in jail. There have been no measurable steps by the parents to improve or correct the circumstances that first led to the CHINS adjudication and the removal of the children from their care. [D.H.'s] biological father has not had any contact with him nor has he provided for him.

Mother's App. Vol. II p. 45. In its conclusions regarding S.W., the trial court found:

> By the clear and convincing evidence the court determines that there is a reasonable probability that reasons that brought about the child's placement outside the home will not be remedied. This is the third CHINS case involving the Mother, and Father. The adjudication in the first two cases, involving [S.W.'s] brother, [D.H.], as in this most recent case, was based on neglect and drug use. Services were provided to address those issues. The Mother and Father have moved from a condemned trailer, to a home that also presented health hazards including the presence of mold, and then to a motel room in an area that poses risk of violent events including fights and gunfire. The motel room is inadequate for the care for the children and is additionally compromised by the needs of the Mother's elderly mother. They rely on the seventy-seven year old grandmother for their financial support. They are without resources and, due in part to their rental history, to secure more appropriate housing. Despite multiple intervention services for drug addictions, and abuse, the Mother has been arrested for or violated her probation for drug possession or use. She is currently in jail. There have been no measurable steps by the parents to improve or correct the circumstances that first led to the CHINS adjudication and the removal of the children from their care.

Father's App. Vol. II p. 28.

[16] Father argues that he sustained head injuries at the age of thirteen when he was hit by a drunk driver. Despite his injuries, he was able to raise two other children, who are now adults, after they were removed from their mother, and he also cares for his elderly mother-in-law. He contends that, despite S.W.'s premature birth, she now has no special needs, and he is able to care for her. Father testified that he has applied for Social Security benefits and that he previously had long-term employment.

[17] Mother argues that she has made efforts to comply with the parent participation plan but that she has been hampered by her short-term incarcerations. Mother contends that she will be released soon and that she should be given the opportunity to establish a stable and appropriate life following her release. According to Mother, S.W. does not currently have any special needs, which were present at the time of her removal. Mother also argues that both parents have been employed during these proceedings and that there was no evidence the hotel room was inadequate for the family.

[18] DCS presented extensive evidence regarding the parties' inability to maintain consistent employment and appropriate housing. Further, Father has exhibited serious anger management issues that he has refused to address, and he visited S.W. only once during these proceedings. Mother has failed to address her substance abuse issues, which have repeatedly resulted in her incarceration during these proceedings. She has continued using Spice, even after receiving treatment and becoming pregnant again. Much of Mother's and Father's arguments are merely requests that we reweigh the evidence, which we cannot

do.  Given Mother's and Father's lack of progress despite years of intensive services, the trial court's findings are not clearly erroneous.

## II.  Best Interests

[19]  Father challenges the trial court's finding that termination of his parental rights is in S.W.'s best interests, and Mother challenges the trial court's finding that termination of her parental rights is in D.H. and S.W.'s best interests.  In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence.  *D.D.*, 804 N.E.2d at 267.  In doing so, the trial court must subordinate the interests of the parents to those of the child involved.  *Id.*

[20]  Regarding D.H., the trial court found:

> In this case the Guardian Ad Litem has concluded that termination of parental rights is in the child's best interests.  The child needs a safe stable and nurturing home environment.  He and his sister are being provided a safe sustainable home by their foster parent who has expressed his interest in adopting them.  He is familiar with the needs of both children and has demonstrated an ability to maintain the services they require.  The children and he are closely bonded.  The Court finds and concludes that termination of parental rights is in the children's best interests.

Mother's App. Vol. II p. 45.  Regarding S.W., the trial court found:

> In this case the Guardian Ad Litem has concluded that termination of parental rights is in the child's best interests.  The child needs a safe stable and nurturing home environment. [She] and her brother are being provided a safe sustainable home by

their foster parent who has expressed his interest in adopting them. He is familiar with the needs of both children and has demonstrated an ability to maintain the services they require. The children and he are closely bonded. The Court finds and concludes that termination of parental rights is in the children's best interests.

*Id.* at 52.

[21] On appeal, Father argues only that S.W.'s best interests were not served by the termination because DCS did not consider placing S.W. with Father's adult daughter, A.W. In support of his argument, Father cites Indiana Code Section 31-34-6-2, which requires DCS to consider placing a CHINS with a relative before considering other placements. However, Father's argument is more of a challenge to DCS's plan for S.W. than a challenge to whether termination of his parental rights is in S.W.'s best interests. Moreover, initially A.W. only wanted to visit with S.W. Approximately two months before the termination hearing, she contacted the DCS case manager about placement of S.W., but not D.H., with her. The case manager testified that A.W. was being considered.

[22] DCS recommended termination of Father's and Mother's parental rights because of their lack of compliance with services, Mother's continued incarceration, the family's lack of appropriate housing, and the fact that the children are bonded and doing well in foster care. The guardian ad litem also recommended termination of Father's and Mother's parental rights. Although D.H. and S.W. are doing well in foster care, D.H. works with a therapist to address past traumas, including "exposure to domestic violence" and sexual

abuse. Tr. Vol. I p. 247. D.H. had difficulty dealing with Mother's inconsistent visitations and blames himself that "he can't go home." *Id.* at 249. DCS also presented evidence regarding Mother's repeated incarcerations and continued substance abuse, Father's and Mother's lack of participation with most of the services, and Mother's and Father's lack of progress with the services they did engage in, and Father's unresolved anger management issues. Given the totality of the evidence, the trial court's conclusions regarding D.H.'s and S.W.'s best interests are not clearly erroneous.

# Conclusion

[23] The evidence is sufficient to support the termination of Father's parental rights to S.W. and Mother's parental rights to D.H. and S.W. We affirm.

[24] Affirmed.

Kirsch, J., and Robb, J., concur.